UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GARY P. BOLTON,

        Plaintiff,

vs.

PAGE AUTOMOTIVE, INC.,
*a Michigan corporation*, d/b/a
PAGE HONDA and
PAGE HONDA OF BLOOMFIELD,

        Defendant.

Case No.
Hon.

_____/

Brian J. Farrar (P79404)
STERLING ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Ste. 250
Bloomfield Hills, Michigan 48304
(248) 644-1500
bfarrar@sterlingattorneys.com

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Gary Bolton by his attorneys Sterling Attorneys at Law, P.C., for his Complaint and Demand for Jury Trial, submits the following:

*Jurisdiction and Parties*

1. This is an action for race discrimination and retaliation, in violation of 42 USC 1981, and Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* wrongful discharge in violation of public policy; and breach of contract arising out of plaintiff's employment relationship with defendant.

2. Plaintiff Gary P. Bolton (hereafter "plaintiff" or "Bolton") is an individual residing in Howell, Michigan, within the Eastern District of Michigan.

3. Defendant Page Automotive, Inc, is a Michigan corporation, located in Southfield, Michigan, within the Eastern District of Michigan.

4. Defendant conducts business under the names "Page Honda" and "Page Honda of Bloomfield."

5. The events giving rise to this cause of action occurred within the Eastern District of Michigan.

6. This Court has federal question jurisdiction over plaintiff's federal claim pursuant to 28 USC 1331 because this action arises under the laws of the United States.

7. This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 USC 1367(a).

*Background Facts*

8. Defendant operates a car dealership in Southfield, Michigan.

9. Bob Page ("Page"), the owner and principal of defendant, hired Bolton on or about September 3, 2019 to serve as General Sales Manager/General Manager for its Bloomfield Hills dealership.

10. In that role, Bolton was responsible for managing the day-to-day operations of the dealership, increasing sales volume, and supervising approximately 20 sales employees.

11. At all times, Bolton was a loyal and excellent employee.

12. Under Bolton's leadership, defendant's profits increased by roughly seven times what they had previously been.

13. When defendant hired Bolton, Page and Bolton entered into an agreement in which defendant would pay Bolton an annual bonus of 5% of the dealership's end-of-year net profit.

14. In approximately April 2022, Page informed Bolton that Page's wife, Jue Vermeulen Page ("Jue"), would be taking over operations of the dealership and that Bolton would begin reporting to her.

15. When Bolton started reporting to Jue, he noticed her engaging in several practices which were illegal and unethical.

16. For instance, on several occasions Bolton observed Jue removing Monroney stickers from the windows of vehicles which were for sale to customers.

17. Federal law requires that all dealerships display those stickers which contain important information for customers such as the Manufacturer's Suggested Retail Price ("MSRP"), and details on manufacturer's warranties.

18. Bolton told Jue that it was illegal to remove the Monroney stickers, but Jue ignored him.

19. Bolton also observed Jue instructing sales associates to remove the Monroney stickers when negotiating with customers so that the customers could not see the suggested price for the vehicle they were purchasing.

20. Bolton complained to Page that this was illegal and unethical but Page refused to remedy her actions, and instead laughed and told Bolton, "you have to give her credit for trying."

21. Bolton observed that many of defendant's customers were of Asian descent and had limited proficiency in the English language.

22. Bolton noticed that Jue's deceptive marketing tactics primarily affected Asian and foreign-born customers.

23. Bolton observed Jue charging Asian customers higher prices for the same vehicles than those sold to White, American-born customers.

24. On several occasions, Bolton observed Jue making false statements to Asian customers concerning a vehicle's MSPR or warranties.

25. As a result, Asian and foreign-born customers were discriminated against by Jue during the sales process.

26. Plaintiff told Jue and Page that it was illegal to discriminate against customers based on their race or national origin.

27. Plaintiff also told Jue and Page that he would not remove the Monroney stickers and would not charge customers different prices based on their race or national origin.

28. On or about November 2, 2022, defendant terminated Bolton.

## COUNT I

*Race Discrimination/Retaliation in Violation of 42 USC 1981*

29. Plaintiff incorporates the preceding paragraphs by reference.

30. At all material times, plaintiff Bolton was an employee and defendant was his employer, covered by and within the meaning of 42 USC 1981.

31. Defendant treated customers differently on the basis of their race and national origin.

32. Defendant retaliated against plaintiff when he complained of this discrimination and disparate treatment on behalf of Asian and foreign-born customers.

33. Plaintiff engaged in protected activity when he complained on behalf of Asian and foreign-born customers, and when he refused to engage in discriminatory practices.

34. Defendant was predisposed to discriminate and retaliate against plaintiff due to his opposition to defendant's illegal actions and acted in accordance with that predisposition.

35. The discriminatory and retaliatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of plaintiff.

36. As a direct and proximate result of those actions, the terms, conditions and privileges of plaintiff's employment were adversely affected and he was terminated.

37. As a direct and proximate result of the defendant's wrongful and retaliatory treatment of plaintiff, plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

### COUNT II

*Race/National Origin Retaliation*
*Michigan's Elliott Larsen Civil Rights Act*

38. Plaintiff incorporates the preceding paragraphs by reference.

39. At relevant times, plaintiff was an employee and defendant was his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2201.

40. Michigan's ELCRA prohibits discrimination and retaliation on the basis of race and national origin.

41. Defendant's treatment and termination of plaintiff, as described above, was based, at least in part, on plaintiff's opposition to defendant's illegal and discriminatory practices.

42. Defendant was predisposed to discriminate and retaliate against plaintiff for opposing discrimination towards Asian and foreign-born customers.

43. The actions of defendant were deliberate and intentional, and engaged in with reckless indifference to the rights and sensibilities of plaintiff.

44. As a direct and proximate result of defendant's wrongful and discriminatory treatment of plaintiff, he has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT III

*Wrongful Discharge in Violation of Public Policy ("Public Policy Tort")*

45. Plaintiff incorporates the preceding paragraphs by reference.

46. During his employment, plaintiff refused to violate the law, as directed by Vermeulen and Page.

47. In particular, plaintiff objected to and refused directives with respect to discriminatory pricing and removal of the Monroney stickers.

48. The laws implicated by these directives include, but are not limited to, The Automobile Information Disclosure Act of 1958, 15 USC 1231–1233.

49. Defendant retaliated against plaintiff due, in part, to his refusal to violate the law.

50. Defendant's treatment and termination of plaintiff as described above violates clearly established Michigan public policy which prohibits an employer from retaliating against an employee because he failed or refused to violate a law or rules and regulations of the United States during the course of his employment.

51. As a direct and proximate result of defendant's wrongful and discriminatory treatment of plaintiff, he has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

### COUNT IV

*Breach of Contract*

52. Plaintiff incorporates the preceding paragraphs by reference.

53. Plaintiff and defendant entered into a binding agreement which provided that defendant would pay plaintiff an annual bonus of 5% of the dealership's end-of-year net profit.

54. For the year 2020, plaintiff's bonus should have been approximately $5,000.

55. For the year 2021, plaintiff's bonus should have been approximately $25,000.

56. For the year 2022, plaintiff's bonus should have been approximately $70,000.

57. Plaintiff was able to and did perform his obligations under the agreement at all relevant times.

58. Defendant breached the agreement by not complying with its obligations and by failing and refusing to pay plaintiff the bonus compensation owed to him.

59. Alternatively, defendant is liable under the doctrine of *quantum meruit*, as defendant reaped an unfair benefit by failing to pay plaintiff the bonus he was owed, and inequity and injustice will result if defendant retains the benefit of plaintiff's work without compensating plaintiff for his efforts.

**RELIEF REQUESTED**

For all the foregoing reasons, plaintiff Gary P. Bolton demands judgment against the defendant as follows:

A. **Legal Relief:**

   1. Compensatory damages in whatever amount he is found to be entitled;

   2. Exemplary damages in whatever amount he is found to be entitled;

   3. Punitive damages in whatever amount he is found to be entitled;

   4. A judgment for lost wages and benefits in whatever amount he is found to be entitled;

   5. An award of interest, costs and reasonable attorney fees; and,

   6. Whatever other legal relief appears appropriate at the time of final judgment.

B. **Equitable Relief:**

   1. An injunction out of this Court prohibiting any further acts of wrongdoing;

   2. An award of interest, costs and reasonable attorney fees; and,

   3. Whatever other equitable relief appears appropriate at the time of final judgment.

## JURY DEMAND

Plaintiff, by his attorneys, hereby demands a trial by jury of all issues in this cause.

        Respectfully submitted,

        STERLING ATTORNEYS AT LAW, P.C.

        By:  /s/Brian J. Farrar
              Brian J. Farrar (P79404)
              Attorneys for Plaintiff
              33 Bloomfield Hills Pkwy., Ste. 250
              Bloomfield Hills, MI 48304
              (248) 644-1500

Dated: February 1, 2023